IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHELLE STEPHANIE DUGAN,

        Plaintiff,

vs.                                  Case No. 17-2165-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.   General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 31, 2016, administrative law judge (ALJ) Michael Comisky issued his decision (R. at 21-36). Plaintiff alleges that she has been disabled since November 1, 2012 (R. at 21). Plaintiff is insured for disability insurance benefits through

4

September 30, 2014 (R. at 24).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 24).  At step two, the ALJ found that plaintiff has severe impairments (R. at 25).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 26).  After determining plaintiff's RFC (R. at 27), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 34).  At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 35-36).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 36).

**III.  Are the ALJ's mental RFC findings supported by substantial evidence?**

In his decision, the ALJ made mental RFC findings that plaintiff could understand, remember and carry out short, simple instructions and work tasks at an SVP 2 level.  Plaintiff could have frequent contact with coworkers and supervisors, but only occasional contact with the general public.  Working with the general public should not be a primary job duty (R. at 27).

In making his mental RFC findings, the ALJ considered two medical source opinions.  Dr. Wilkinson, a non-examining medical source, prepared a mental RFC assessment on November 25, 2014 after reviewing the record in this case.  Dr. Wilkinson

5

summarized the record in support of his findings (R. at 113-114). Dr. Wilkinson found that plaintiff had a moderate limitation in the ability to carry out detailed instructions. She found that plaintiff was able to carry out simple and some intermediate instructions, and can sustain routine tasks and complete a normal work week. Dr. Wilkinson further found that plaintiff was moderately limited in her ability to interact appropriately with the general public. She indicated that plaintiff can relate to supervisors, but can only work in jobs with infrequent interaction with the public (R. at 118-120). The ALJ accorded great weight to this opinion, finding that Dr. Wilkinson's opinions were consistent with the medical record and plaintiff's daily activities (R. at 34).

The ALJ also considered a consultative examination from Dr. Schemmel, who examined plaintiff on one occasion and prepared a report on November 11, 2015 (R. at 1601-1603). Dr. Schemmel opined as follows:

> [Plaintiff] demonstrated the ability to comprehend and follow simple and intermediate instructions. Given her anxiety and depression, she does not appear capable of gainful employment involving regular interactions with coworkers, supervisors, and/or the public. [Plaintiff] does not appear to have the emotional stability or adaptability needed for sustained gainful employment.

6

(R. at 1603).  The ALJ stated that this opinion was provided long after the expiration of plaintiff's insured status [plaintiff was insured through September 30, 2014; plaintiff was interviewed by Dr. Schemmel on November 11, 2015].  The ALJ also found that Dr. Schemmel's findings were inconsistent with the treatment records, mental status exams and plaintiff's reported level of functioning during the relevant period.  The ALJ also noted that the report provided little insight into plaintiff's level of functioning within the relevant period.  As such, the ALJ concluded that the opinion "has not been given much weight" (R. at 34).

Plaintiff argues the ALJ erred in the relative weight accorded to the medical source opinions.  The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are generally given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

At the initial hearing on October 26, 2015, the ALJ indicated that he would order a consultative examination, noting

7

that he did not have a mental health RFC assessment (R. at 67-69). However, the ALJ did have the mental RFC assessment from Dr. Wilkinson. Subsequently, Dr. Schemmel performed a consultative examination.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Although a non-examining physician is generally entitled to the least weight, the ALJ accorded the opinions of Dr. Wilkinson great weight, while giving little weight to the opinions of a consultative examination by Dr. Schemmel. Dr. Wilkinson had

8

reviewed the records in this case, including plaintiff's medical treatment records, while Dr. Schemmel interviewed plaintiff on one occasion and prepared a report.

The ALJ discussed the mental treatment records in some detail (R. at 29-30, 34), as did Dr. Wilkinson (R. at 113-114). Dr. Wilkinson clearly relied on the mental treatment records in making his RFC findings, and the ALJ gave greater weight to the report of Dr. Wilkinson because he found that it was more consistent with the medical records and plaintiff's daily activities than the report from Dr. Schemmel.  The court will not reweigh the evidence.  The court finds that there is sufficient evidence which a reasonable mind might accept as adequate to give greater weight to the opinions of Dr. Wilkinson.

**IV.  Did the ALJ err by relying on the report of a single decision maker (SDM)?**

In his decision, the ALJ stated that he accorded great weigh to the state agency medical and psychological opinions found in Exhibits 2A and 4A (R. at 34).  The only opinion contained in Exhibit 2A is a physical RFC assessment by an SDM (R. at 95-98).  An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other

9

non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010; Doc. 19 at 9).

The ALJ also stated that his RFC findings are supported by the evidence of record, and he gave special emphasis to the state agency assessments by Dr. Wilkinson (mental) and Dr. Coleman (physical) (R. at 34). The ALJ's physical RFC findings are nearly identical to the physical RFC assessment by Dr. Coleman (R. at 27, 115-118). Thus, despite the ALJ's erroneous reference to Exhibit 2A, which only contained an opinion by an SDM, the ALJ's physical RFC findings clearly gave great weight to the opinions of an acceptable medical source, Dr. Coleman.

Furthermore, in this case, plaintiff does not cite to any medical opinion evidence which conflicts with or contradicts the findings of the ALJ or the opinions of Dr. Coleman. The ALJ is allowed to engage in less extensive analysis where none of the record evidence conflicts with the ALJ's conclusion that plaintiff can perform work at a certain exertional level. Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009); Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004). On the facts of this case, the court finds that the ALJ's erroneous reference to the opinion on an SDM is harmless error.[1]

---

[1] Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the

**V. Did the ALJ err in his finding at step five that plaintiff can perform other work that exists in significant numbers in the national economy?**

At step five, the ALJ found that plaintiff could perform three sedentary jobs: (1) wire wrapper (aka: patcher), 34,000 jobs nationally, (2) lens inserter, 20,000 jobs nationally), and (3) production checker (aka: dowel inspector), 39,000 jobs nationally (R. at 35-36). In making these findings, the ALJ adopted the opinions of the vocational expert (VE), who testified at the hearing (R. at 80-81).

Plaintiff first argues that cases to which they cite indicate that there are only 8,000 lens inserter jobs and 20,000 production checker jobs nationally (Doc. 11 at 33). However, this information or evidence was not before the ALJ in this case, and the plaintiff made no effort to provide this information to the ALJ. Court review of the Commissioner's denial of social security disability benefits is limited to a consideration of the pleadings and transcript filed by the Commissioner. It is not a trial de novo. The court is not at liberty to consider evidence not in the record certified by the Commissioner. Atteberry v. Finch, 424 F.2d 36, 39 (10th Cir. 1970). A reviewing court is limited to the record in examining

---

correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

the evidence.  Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985).  The only evidence on this issue before the ALJ was the testimony of the VE; plaintiff's attorney indicated twice that they had no objection to the vocational expert's testimony (R. at 74, 78).  The court finds no error by the ALJ's reliance on the undisputed testimony of the VE regarding the number of these jobs in the national economy.

The second issue raised by the plaintiff is whether the jobs identified by the ALJ conflict with the ALJ's RFC finding that plaintiff could "**understand, remember and carry out short, simple instructions and work tasks**" at an SVP 2 level (R. at 27, 80 emphasis added).  One of the three jobs identified, that of patcher, requires a reasoning level of 2, which involves the ability to **apply commonsense understanding to carry out detailed but uninvolved written or oral instructions**.  DOT 723.687-010, 1991 WL 679524 (emphasis added).

An ALJ must inquire about and resolve any conflicts between the VE testimony and the description of that job in the DOT.  Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009).  In Hackett v. Barnhart, 395 F.3d 1168, 1176 (2005) the ALJ stated that plaintiff retains the attention, concentration, persistence and pace levels required for simple and routine work tasks.  The court, citing to Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997), held that this limitation seems inconsistent with the

demands of level-three reasoning; the jobs that the VE and the ALJ identified as being jobs that plaintiff could perform required level-three reasoning. The court therefore reversed this portion of the ALJ's decision and remanded to allow the ALJ to address the apparent conflict between plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE.

In dicta, the court in Hackett stated that level-two reasoning appears more consistent with plaintiff's RFC. 395 F.3d at 1176. However, that issue was not before the court in Hackett. In the case of Paulek v. Colvin, 662 Fed. Appx. 588, 591, 594 (10th Cir. Oct. 3, 2016), the ALJ found that Paulek was able to understand, remember, and carry out simple instructions. The ALJ, relying on VE testimony, found that plaintiff could perform past work which had a reasoning level of three. After the court set out the DOT description for level-three, level-two and level-one reasoning, the court stated the following:

> As Mr. Paulek notes, we have previously held that a limitation to "simple and routine work tasks ... seems inconsistent with the demands of level-three reasoning." Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (internal quotation marks and citation omitted). While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple

13

> instructions is inconsistent with both level-two and level-three reasoning. See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997). An "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999) (emphasis added); see also Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT.]").

662 Fed. Appx. at 594.  The court found a conflict between the VE's testimony and the job descriptions in the DOT; the ALJ's failure to have the VE reconcile this conflict was found to be reversible error.  662 Fed. Appx. at 594.

As noted above, a reasoning level of 2 requires the ability to carry out detailed but uninvolved written or oral instructions.  The ALJ stated that plaintiff can understand, remember, and carry out short, simple work instructions, the same limitation as that given in Paulek.  Lucy, cited with approval in Hackett and Paulek, held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning.  Lucy, 113 F.3d at 909.  On its face, the language for a reasoning level of 2 (the ability to carry out detailed but uninvolved written or oral instructions) reasonably appears to conflict with a person being limited to understanding,

remembering and carrying out simple work instructions. MacDonald v. Berryhill, Case No. 16-2594-SAC (D. Kan. Feb. 9, 2018; Doc. 27 at 7-12); Johnson v. Berryhill, Case No. 16-4185-SAC (D. Kan. Dec. 20, 2017; Doc. 17 at 22-24). Because of this conflict, the ALJ erred by failing to inquire about and resolve this conflict. The case shall therefore be remanded in order for the ALJ to inquire about and resolve the conflict between the ALJ's RFC findings, the VE's testimony and the description of the patcher job in the DOT.[2]

The court would note that defendant does not argue that even if the ALJ erred by failing to inquire about and resolve the conflict between the RFC findings and the patcher job as identified in the DOT, such error is harmless because the VE identified two other jobs that did not conflict with the DOT, and 59,000 of those jobs exist in the national economy according to the VE. Thus, the issue is not before the court. Even if the court were to consider the issue of harmless error, the court would not find the error harmless. In the case of Ferguson v. Berryhill, Case No. 16-1348-SAC (D. Kan. June 12, 2017, Doc. 14 at 10-17), the court conducted an extensive review

---

[2] Although the ALJ indicated that plaintiff could perform simple work instructions and tasks at an SVP-2 level, SVP-2 only indicates that this describes a job that take anything beyond short demonstration up to and including 1 month to perform. SVP-2 is silent on a person's ability to carry out detailed but uninvolved instructions. On the other hand, there is a clear conflict between the ability to understand, remember, and carry out **simple** work instructions and a job that requires the ability to carry out **detailed** but uninvolved instructions. Defendant does not cite to any statute, regulation, ruling, or case law that establishes that a person with an SVP-2 has the ability to perform a job with a reasoning level of 2.

15

of the case law regarding what constitutes a significant number of cases in the national economy.  In summary, the 10th Circuit found harmless error when the remaining number of jobs regionally range from 11,000 to 17,500 and nationally range from 152,000 to 215,000, because no reasonable factfinder could have determined that a suitable number of jobs do not exist in significant numbers.

On the other hand, in Chavez v. Barnhart, 126 Fed. Appx. 434, 436-437 (10th Cir. Feb. 3, 2005), the 10th Circuit determined that when the remaining number of jobs was 199 in the region and 49,957 nationally, the court declined to find harmless error and remanded the case in order for the ALJ to make a determination of whether the remaining number of jobs was sufficient to qualify as a significant number of jobs.  In Vyskocil v. Astrue, Case No. 11-1135-JWL, 2012 WL 2370200 at *3 (D. Kan. June 22, 2012), Judge Lungstrum held that when the remaining number of jobs was 450 in the state and 55,000 in the national economy, the court declined to find harmless error and remanded the case.

In the case before the court, the remaining number of jobs is 825 in Kansas and 59,000 nationally (R. at 35-36, 80-81). Thus, the remaining number of jobs is closer to the cases cited above (the remaining number of jobs were 49,957 and 55,000) in which the courts declined to find harmless error on the grounds that the remaining number of jobs nationally is significant as a

matter of law, and remanded the case for a determination of whether the number of jobs is sufficient to qualify as significant.  By contrast, the remaining number of jobs in the case before the court is far less than the cases cited above (the remaining number of jobs nationally ranged from 152,000 to 215,000) in which the courts determined that no reasonable factfinder could have determined that a suitable number of jobs do not exist in the national economy.  Based on the facts of this case, and the guidance provided by the cases cited above and in Ferguson, the court would decline to find harmless error on the ground that the remaining number of jobs is significant as a matter of law.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of March 2018, Topeka, Kansas.


                              s/Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge